FILED

2007 Jun-07  PM 03:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **HR ACQUISITION I CORPORATION,** ) | |
| **formerly known as Capstone Capital** ) | |
| **Corporation,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO.:  2:05-CV-2047-VEH** |
| ) | |
| **TWIN CITY FIRE INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

### Introduction

Pending before the court is Defendant Twin City Fire Insurance Company's ("Twin City") Motion for Reconsideration (Doc. #35) filed on April 23, 2007, concerning the court's decision entered on April 9, 2007, denying Twin City's Motion for Summary Judgment.   Plaintiff HR Acquisition I Corporation ("HR Acquisition") filed its opposition (Doc. #37) on April 27, 2007, and Twin City filed its reply (Doc. #40) on May 5, 2007.  The court has carefully reviewed the parties' filings, and Twin City's Motion for Reconsideration is now ripe for a decision.

For the reasons hereinafter stated, the relief sought (summary judgment) in Twin City's Motion for Reconsideration is due to be denied.  However, the court has

nonetheless reconsidered its opinion and finds it appropriate to add to its prior memorandum opinion (Doc. #32) the Analysis set forth herein. The Order (Doc. #33) denying summary judgment, however, remains unchanged.

## Applicable Law

In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly. *See United States v. Bailey*, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003);[1] *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992); *Spellman v. Haley*, No. 97-T-640-N, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling"). Indeed, as a general rule, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center of AL, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003); *see also Rossi v. Troy State University*, 330 F. Supp. 2d 1240, 1249 (M.D. Ala. 2002) ("Additional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration."); *Lazo*

---

[1]District court decisions, even from within the Eleventh Circuit, are not controlling authority, but rather are persuasive authority for this court to consider.

*v. Washington Mutual Bank*, No. 00-55205, 10 Fed. Appx. 553, 2001 WL 577029, *1 (9th Cir. May 29, 2001) (motion to reconsider is properly denied when record shows that movant merely reiterates meritless arguments); *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.").

Likewise, the Eleventh Circuit has declared that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp. 2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider when movant advances several new arguments); *Coppage v. U.S. Postal Service*, 129 F. Supp. 2d 1378, 1379-81 (M.D. Ga. 2001) (similar);[2] *Richards v. United States*, 67 F. Supp. 2d 1321, 1322 (M.D. Ala. 1999) (same).

More specifically regarding Plaintiff's Motion to Alter to Amend Judgment, "[t]he purpose of a Rule 59(e) motion is not to raise an argument that was previously available, but not pressed." *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998).

---

[2]This discussion is lifted almost verbatim from Judge Steele's opinion in *Gougler v. Sirius Products, Inc.*, 370 F. Supp.2d 1185, 1189 (S.D. Ala. 2005).

"Finally Linet appeals the district court's denial of his motion to amend or alter the final judgment under Federal Rule of Civil Procedure 59(e). Linet's motion to the district court urged it to reconsider its ruling because Linet disagreed with the district court's treatment of certain facts and its legal conclusions. His motion was essentially a motion to reconsider the district court's prior summary judgment order. Linet however cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.  *See Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir.1998); 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)."  *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

In sum, Rule 59(e) motions may be granted (1) to account for an intervening change in controlling law; (2) to address newly-discovered or previously-unavailable evidence; or (3) to correct a clear error or prevent manifest injustice.  *Cover v. Wal-Mart Stores Inc.*, 148 F.R.D. 294 (M.D. Fla. 1993); *see also In re Kellogg*, 197 F.3d 1116 (11th Cir. 1999) ("The only grounds for granting Kellogg's motion are newly discovered evidence or manifest errors of law or fact."); *American Home*, 763 F.2d at 1239 ("In short, any error that may have been committed is not the sort of clear and obvious error which the interests of justice demand that we correct.").  "In practice,

4

because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied." Wright, Miller & Kane, *op. cit*., § 2810.1 at 128. Finally, "[t]he decision to alter or amend judgment is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion. *Futures Trading Comm'n v. American Commodities Group,* 753 F.2d 862, 866 (11th Cir.1984); *McCarthy v. Mason*, 714 F.2d 234, 237 (2d Cir.1983); *Weems v. McCloud*, 619 F.2d 1081, 1098 (5th Cir.1980).[3]" *American Home Assur. Co. v. Glenn Estess & Associates, Inc*.,763 F.2d 1237, 1238-39 (11th Cir. 1985); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000) (same).

## Analysis[4]

After giving Twin City's motion in depth consideration and evaluating the controlling case law regarding Rule 59(e) motions, the court determines that no adequate grounds exist to justify a   reconsideration of its prior ruling denying summary judgment on the issue of Twin City's duty to defend and indemnify HR Acquisition, formerly known as Capstone Capital Corporation ("Capstone").  Twin

---

[3]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.  *Id.* at 1209.

[4]The court's Memorandum Opinion (Doc. #32) entered on April 9, 2007, did not discuss HR Acquisition's specific ambiguity argument.  Accordingly, the court supplements its original Memorandum Opinion with the analysis contained herein.

City's primary point on reconsideration is that the court's conclusions about ambiguity within the language of the Policy's "outside service" exclusion are wrong. (Doc. #35 at 1("In particular, Twin City believes that, at a minimum, summary judgment should be entered in its favor pursuant to the "outside service" exclusion contained in the Twin City Policy and that coverage therefore does not exist for Capstone in connection with the underlying *Tucker* Derivation Action.")); *see also generally* Doc. #36 (Twin City's Memorandum in Support of its Motion for Reconsideration).  The "outside service" exclusion provides:

> The **Insurer** shall not be liable to make any payments for Loss in connection with any **Claim** made against the **Directors** and **Officers**, or with respect to Insuring Agreements B(2), C and D, the **Company**:

> based upon, arising from or in any way related to such **Directors** and **Officers** serving as a director, officer, trustee, regent, governor, trust manager, manager, general partner, partnership manager, joint venture manager or employee of any entity other than the **Company** even if such service is at the direction or request of the **Company** . . .

(Doc. #32 at 15).

Regarding Twin City's arguments on the application of the "outside service" exclusion, while a party may validly raise a mistake of law in a motion for reconsideration, such an argument must be based upon a mistake caused:  either by an intervening change in controlling law or by newly discovered evidence raising novel legal issues.  Procedurally, Twin City does not meet either one of these

standards.    Twin City's Motion for Reconsideration is not supported by any intervening change in controlling law or any newly discovered evidence that would support an order altering the result in the court's decision denying summary judgment in its favor.  Instead, in its Motion for Reconsideration, Twin City maintains, as it did originally on summary judgment, that the "outside service" provision unambiguously excludes coverage for Capstone because the *Tucker* Derivative Action involves allegations against certain directors and officers of Capstone serving in non-Capstone capacities, which calls for excluding coverage for not only Scrushy, Striplin, and Martin (those directors and officers of Capstone who were sued in both a Capstone and a non-Capstone capacity), but also Capstone.

Nonetheless, the court has reconsidered its summary judgment ruling in light of the arguments asserted by Twin City in its pending Motion for Reconsideration.

The Eleventh Circuit recently summarized Alabama law in the areas of ambiguity and exclusionary language in another Twin City case.  *See generally Twin City Fire Ins. Co., Inc. v. Ohio Cas. Ins. Co., Inc.*, 480 F.3d 1254 (11th Cir. 2007). Regarding ambiguity:

> In Alabama, a provision in an insurance contract is ambiguous "when more than one interpretation may fairly be given to a policy provision." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 695 (Ala. 2001).  In deciding whether a provision is ambiguous, the terms "should be given a rational and practical construction."  *State Farm Fire & Cas.*

*Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999). "[A] court cannot consider the language in the policy in isolation, but must consider the policy as a whole." *Id.* The cross-suit exclusion is ambiguous in this instance because it does not specify whether an "insured" includes an "additional insured," for whom coverage is specifically provided elsewhere in the policy.

*Twin City*, 480 F.3d at 1262.  As for exclusions of coverage:

> [I]n Alabama "exceptions to coverage are to be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and . . . clauses setting out exceptions must be construed most strongly against the company that issued the policy." *Wakefield v. State Farm Mut. Auto. Ins. Co.*, 572 So. 2d 1220, 1223 (Ala. 1990). *See also Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 247 (Ala. 1995). Because the cross-suit exclusion is ambiguous with respect to whether it excludes liability owed from a named insured to an additional insured, the ambiguity must be resolved against Ohio Casualty, and in favor of coverage. Accordingly, we reject Ohio Casualty's argument based on the cross-suit exclusion.

*Twin City*, 480 F.3d at 1263 (footnote omitted).

As pointed out by HR Acquisition in opposing summary judgment, one reasonable interpretation of the "outside service" exclusion is that it operates to exclude coverage for those individual insureds under the Policy who have been sued for their actions as directors and officers of another company that is not an insured entity under the Policy, while coverage for the insured entity, such as Capstone, remains in place. *See, e.g., Continental Cas. Co. v. Adams*, No. 3:CV02-1122, 2003 WL 22162379 (M.D. Ala. Sept. 12, 2003).

In *Adams*, the exclusion at issue read:

> The insurer shall not be liable to pay any loss in connection with any claim: based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged conduct by the individual insureds in the discharge of their duties as directors, officers, trustees, employees or volunteers of any entity other than the [insured] Entity or [insured] Charitable Organization, even if directed or requested by the [insured] Entity to serve as directors, officers, trustees, employees or volunteers of such entity.

2003 WL 22162379, *3 (citation omitted).  At issue in *Adams* was whether this language excluded coverage under the policy for the individual insureds in connection with a check-kiting scheme that also included allegations against both an insured and another affiliated, but uninsured entity as part of the scheme.  Originally, the carrier had provided a defense to the insured entity as well as the individuals.  However, by a letter dated October 25, 2001, the insurer withdrew its defense of the individuals only based upon the above outside service exclusionary language:

> There is no longer any question that the named Individual Insureds, Richard P. Adams, Linda Leighton and John Sabol, acted in the discharge of their duties as directors and/or officers for HSCM (a separate entity and not an Insured under the Policy), when they opened and maintained the HSCM account . . . into which the kited checks were deposited, thereby giving rise to the instant Claim. As such, Exclusion L applies to bar further coverage.

2003 WL 22162379, *3 & n.6 ("CNA continued to defend HSC in the Prior Action.") (citation omitted).

9

The exclusionary language in *Adams* is comparable to Twin City's "outside service" exclusion, purports to apply to any claim, and yet the carrier in *Adams* did not seek to withdraw its defense of the insured company based upon the provision. Under such circumstances, the court concludes that one reasonable interpretation of Twin City's "outside service" exclusion is that it applies to individual insureds under the Policy, who are those alleged to have actually engaged in outside service, but not to entity insureds that are sued for their own alleged misconduct such as Capstone in the *Tucker* Derivative Action. Therefore, because the provision is subject to more than one reasonable interpretation, the court, consistent with Alabama law, reaffirms its original determination that the "outside service" exclusion is ambiguous, is due to be construed most strongly against Twin City because of its exclusionary nature, and, accordingly, fails to provide Twin City with a viable basis for summary judgment on reconsideration.

## Conclusion

Twin City's Motion for Reconsideration does not rise to the level of what this court believes, in its discretion, a Rule 59(e) motion must present in order to afford the moving party relief from a judgment. However, the court has considered all of Twin City's arguments and has reconsidered its memorandum opinion and order denying summary judgment. Therefore, Twin City's Motion for Reconsideration is

hereby **GRANTED** in part but the relief sought (summary judgment) is **DENIED**.

**DONE** and **ORDERED** this the 7th day of June, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge